| | |
|---|---|
| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |

Citigroup, Inc., § 
§
       Plaintiff, §
§
versus §    Civil Action H-06-3666
§
National Union Fire Insurance §
Company of Pittsburgh, PA, et al., §
§
       Defendants. §

# Opinion on Summary Judgment

1.  *Introduction.*

An assured settled two actions without obtaining consent from its carriers. It wants indemnity from the carriers because they knew about the lawsuits before writing the coverage and did not exclude them. Because the policy precludes coverage, the carriers win.

2.  *Background.*

Associates First Capital was a mortgage lender. On July 15 1999, Associates bought lender-liability insurance for claims made during the policy period. It had $50 million in primary coverage from underwriters at Lloyd's of London and $150 million from nine excess carriers. The excess policies covered wrongful acts or omissions in its professional services – errors and omissions coverage. Associates paid over $2 million in premiums for the excess coverage.

Once Associates had exhausted the $50 million of underlying coverage from Lloyd's, it could get $25 million each from National Union Fire Insurance Company of Pittsburgh and Starr Excess International, Limited. After that, Associates could get $100 million in layers from these carriers:

- ACE Bermuda Insurance Limited – $25 million;
- Federal Insurance Company – $17 million;

- Twin City Fire Insurance Company – $17 million;
- Chubb Atlantic Indemnity Limited – $17 million;
- St. Paul Mercury Insurance Company – $10 million;
- Steadfast Insurance Company – $9 million; and
- SR International Business Insurance Company, Ltd. – $5 million.

3. *Abusive Lending.*

Seven different lawsuits were filed against Associates for abusive lending during the 1990s – before the policy went into effect. Those plaintiffs were:

- Dianna J. Ballesteros;
- Jonathan Hume;
- Tami Stewart;
- Ralph C. Darden;
- Winifred L. Wood;
- Quentin and Alvina Siemer; and
- State of Arizona.

In April of 1998, the Federal Trade Commission and the Justice Department began looking at the practices of mortgage lenders. That October, the government demanded that Associates disclose its lending practices.

In 2000, during the investigation, Citigroup, Inc., acquired Associates. A year later, the Commission sued Citigroup, saying that Associates had violated the truth in lending statutes. The Commission said that Associates had misrepresented that refinancing its customers' debts into a single loan secured by their homes would be beneficial.

Three months after the Commission sued Citigroup, the individual-plaintiff suits against Associates were consolidated into a class action in California, *Morales et al. v. Associates First Capital Corp, Inc., et al.* It alleged that Associates had committed fraud and was guilty of negligent misrepresentation and other breaches of good faith.

Associates notified all carriers of the Commission and *Morales* actions. The lawsuits settled for $240 million, and Citigroup paid both without obtaining consent of the excess carriers.

4. *Indemnity.*

After paying the settlements, Citigroup asked Lloyd's for indemnity for the Commission and *Morales* actions. Lloyd's explained in a twenty-page letter on February 8, 2002, that it

would not pay Citigroup's claim. By July of 2002, each excess carrier wrote Citigroup that they were adopting Lloyd's position on coverage. On October 25, 2002, Lloyd's categorically denied full coverage.

Four years later, Lloyd's agreed to pay Citigroup $15 million of its $50 million policy in exchange for a release of the Commission and *Morales* actions.

After its settlement with Lloyd's, Citigroup sued for indemnity from the nine excess carriers. Chubb Atlantic has been dismissed in favor of arbitration, and the claims against ACE Bermuda are stayed pending arbitration. Citigroup settled with National Union and Starr Excess, and all claims among them were dismissed in March of 2009.

5. *The Dispute.*

Citigroup has moved for judgment against the carriers, saying its losses are covered under their excess policies. Because the carriers knew about the Commission's investigation and other litigation before issuing the policy and because they chose not to exclude coverage of those claims, Citigroup says they must cover it. Otherwise, their policies were illusory.

The carriers moved for judgment, saying several exclusions in their policies bar coverage. Three carriers also say because Citigroup did not sue them on time, Citigroup is entitled to nothing.

6. *Failure to Exhaust.*

The carriers say that excess insurance is only coverage when the underlying policy has paid the full amount of its contractual indemnity. Lloyd's settled with Citigroup for $15 million. The settlement specified that Citigroup would continue to have $35 million in directors and officers coverage under the Lloyd's primary policy. The carriers say that their responsibility has not been triggered because Citigroup did not exhaust the underlying policy.

Citigroup says that its settlement with Lloyd's is the functional equivalent of exhaustion. Citigroup, not the excess insurers, must pay the gap between the primary insurer's actual payment and the policy limit. The carriers, thus, are left in the same position they would have been had the primary insurer paid the total amount of its liability limit. The law, Citigroup says, favors settlement, and it should not be punished for settling with Lloyd's.

The law does not need to supply an answer. The parties' agreed on one. A court may not allow the assured to pay the loss up to the point that it was obliged to have had and used

primary coverage because that difference could alter the carrier's underwriting calculation. It cannot know, and we may not assume. City may have bought and consumed that coverage, but it chose not to.

The excess policies clearly state they do not apply until the underlying policy has actually been paid to the total of its liability limit. *Ideal Mut. Ins. Co. V. Last Days Evangelical Ass'n, Inc.*, 783 F.2d 1234, 1238 (5th Cir. 1986) (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). The unambiguous terms of the policies prevent Citigroup from circumventing the payment requirement by functional exhaustion – a label without substance or rigor. Here, because Lloyd's did not pay its limit of $50 million, the excess carriers are not required to pay.

7.  *Limitations.*

Twin City and St. Paul say that Citigroup did not sue them within the four-year statute of limitations. A cause of action in this context does not accrue until liability is denied by the insurer. *Provident Life and Accident Ins. Co. v. Knott.*, 128 S.W.3d 211, 221 (Tex. 2003) (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990)). Twin City says it denied coverage on February 15, 2002, and on April 30, 2002. St. Paul says it denied on July 26, 2002. Citigroup responds that they did not deny coverage then. Rather, the carriers merely reserved their rights because their denial letters say that they have only reviewed a limited amount of information.

A.  *Twin City.*

If a letter is read in its entirety to deny coverage, the inclusion of reservations will not vitiate the insurer's denial of coverage. *See Amarco Petroleum, Inc. v. Texas Pacific Indemnity Co.*, 889 S.W.2d 695, 698 (Tex. Civ. App.–Houston 1994). Twin City's letter of February 15, 2002, incorrectly analyzed Citigroup's claim under the directors and officers coverage. It is, thus, not a denial. In contrast, in its letter written April 30, 2002, Twin City identified applicable exclusions under the errors and omissions policy and refused to pay Citigroup's claim: "Twin City regrets that it cannot extend coverage under its policy" for the Commission and Morales actions. Twin City's letter of April 30, 2002, was a denial.

B.  *St. Paul*

St. Paul's letter of July 26, 2002, similarly denied coverage for Citigroup's claim for the Commission action based on several exclusions. According to St. Paul, "no coverage would be available for the [Commission] claim," and "The settlement amount being sought by the FTC in connection with this matter is not reimbursable under the Policy."

St. Paul's July letter, on the other hand, did not respond to Citigroup's *Morales* claim; therefore, Citi's claim for the *Morales* settlement is not barred by the statute of limitations,

C.  *Federal.*

Federal's policy contains this limitations clause: "legal proceedings . . . shall not be brought after the expiration of two years from the discovery of such loss." Federal's says its clause requiring that suits to be brought within two years should be enforced. Citigroup says the limitations clause is void by Texas law because it creates a limitations period of less than two years by starting the limitations clock prior to the date liability is denied. The "loss" in a claim on a contract occurs when it is breached — at the date of denial. Here, Federal denied Citigroup's claim on November 21, 2002; Citigroup brought suit October 23, 2006. Citigroup's action against Federal is barred.

D.  *Limitations Conclusion.*

The suits against Twin City, Federal, and the Commission claim against St. Paul are barred by the limitations periods.

8.  *Conclusion.*

Citigroup did not exhaust its underlying insurer in the manner required by the policies. Citigroup also waited too long to sue some of its insurers.



Citigroup will take nothing from Federal Insurance Company, Twin City Fire Insurance Company, St. Paul Mercury Insurance Company, Steadfast Insurance Company, or SR International Business Insurance Company, Ltd.

Signed on May 28, 2010, at Houston, Texas.

Lynn N. Hughes
United States District Judge